# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE A. KRUGER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 5328 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| ANTHONY J. PRINCIPI, | ) | |
| Secretary of the Department | ) | |
| of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Catherine A. Kruger ("Plaintiff") filed a four-count complaint against defendant Anthony J. Principi, Secretary of the United States Department of Veteran Affairs ("Defendant"), pursuant to 42 U.S.C. § 2000e-16(c). Count I alleges the United States Department of Veteran Affairs ("VA") retaliated against Plaintiff in violation of the Rehabilitation Act, 29 U.S.C. § 794. Counts II and III allege the VA retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a).[1] Defendant moves for summary judgment on all counts.

## I. BACKGROUND FACTS

The following facts are undisputed unless noted. The discussion section of the

---

[1] Count IV alleges the VA retaliated against Plaintiff in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a). However, because Plaintiff is a federal employee, her disability claims must be brought under the Rehabilitation Act. Plaintiff thus withdrew her ADA claim.

opinion provides a more comprehensive presentation of the most relevant facts.

## A.     THE PARTIES

Plaintiff was employed by the VA at the Chicago Regional Office ("CRO") for over 27 years.[2]  PF ¶ 1.  In her final position at the CRO, Plaintiff was a Supervisory Counseling Psychologist in charge of the Vocational Rehabilitation and Employment ("VR&E") program.  *Id.*  She was promoted to the position of Supervisory Counseling Psychologist in 1989 and promoted to the federal employment designation of GS-14 in 1997.  PF ¶ 3.  She received multiple performance awards and enjoyed excellent performance ratings.  *Id.*

Plaintiff contends three supervisors retaliated against her: Michael Olson ("Olson"), Ron Rogala ("Rogala"), and John McCourt ("McCourt").  DF ¶ 3.  In 1995, McCourt became Assistant Director of the CRO and Plaintiff's direct supervisor.  PF ¶ 4.  McCourt remained in this position until September 1998, when he went to work in Washington D.C..  DF ¶ 3.  The Director of the CRO at this time was Montgomery Watson ("Watson").  PF ¶ 5.  Watson remained the Director until he left on May 10, 1998.  *Id.*  Following Watson's departure, Olson became the Director of the CRO in July 1998 and became Plaintiff's highest level supervisor in that office.  PF ¶ 13, DF ¶ 3.  In late April 1999, Rogala became Assistant

_____

[2] Citations to the record are in the following form: Plaintiff's Local Rule 56.1 Statement of Additional Material Facts in Opposition to Summary Judgment is cited as PF ¶ ___; Defendant's Local Rule 56.1 Statement of Material Facts is cited as DF ¶ ___; Defendant's Response to Plaintiff's Additional Facts is cited as DR ¶ ___; Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment is cited as Pl. Mem. at ___; Defendant's Memorandum in Support of Summary Judgment is cited as Def. Mem. at ___; the Appendix to Plaintiff's Local Rule 56.1 Statement of Additional Material Facts in Opposition to Summary Judgment is cited as Pl. App. Ex. ___; the Appendix to Defendant's Local Rule 56.1 Statement of Material Facts is cited as Def. App. Ex. ___.

Director, and thus was Plaintiff's direct supervisor until he retired in January 2002. DF ¶ 3.

McCourt left the CRO and no longer had any supervisory authority over Plaintiff before she participated in Ramza's EEO action or contacted EEO with her own claims in this case. PF ¶ 6-10. Plaintiff found McCourt's management style difficult to deal with, she found him to be confrontational, and she had difficulty approaching him with issues. DF ¶ 4. Two of Plaintiff's co-workers, Chrissy Carr ("Carr") and Michael Bates ("Bates"), also had issues with McCourt's management style, which was described as overbearing, boorish, offensive, and combative. PF ¶ 6-10.

## B.    SARBRUN RAMZA'S HIRING

On or about December 4, 1997, Plaintiff referred Sarbrun Ramza ("Ramza"), a disabled veteran, to McCourt for a computer specialist position at the CRO. PF ¶ 14. Plaintiff testified that in response, McCourt loudly said, "You and your disabled veterans. That's all you think about are your rehabs. Well, there's more to this Agency than Voc Rehab you know." DF ¶ 5. After she referred Ramza for the position in December 1997, she felt McCourt became more accusatory towards her. PF ¶ 16. In February 1998, McCourt hired Ramza. DF ¶ 6. The relationship between Plaintiff and McCourt worsened after Plaintiff talked to McCourt about issues relating to Ramza in May 1998. PF ¶ 22. Plaintiff claims that in May 1998 she became aware that McCourt had made statements to VA employees implying she had a sexual relationship with Ramza. PF ¶ 24.

Ramza initiated an EEO complaint on August 3, 1998. PF ¶ 36. In August 1998, Plaintiff provided testimony for Ramza to the VA's EEO officials that was adverse to the

3

VA's position.  PF ¶ 40.  Approximately three weeks after filing his EEO complaint, Olson terminated Ramza's employment effective September 8, 1998.  PF ¶ 39.

## C.    COMPLAINTS OF DISCRIMINATION AND RETALIATION

In July 1997, Plaintiff submitted a complaint to Watson that she was being discriminated against because she was not receiving equal pay.  PF ¶ 12.  Plaintiff initiated the formal EEO complaint process on October 6, 1998, and filed a formal EEO complaint on November 10, 1998.  PF ¶ 58.  On February 9, 1999, Plaintiff initiated EEO counseling, and filed a second formal EEO complaint on March 31, 1999.  PF ¶ 75, 78.

## D.    ALLEGED RETALIATORY INCIDENTS

### 1.    Audits

On August 6, 1998, Plaintiff requested and received sick leave from Olson.  PF ¶ 42.  Plaintiff returned to work on September 28, 1998.  PF ¶ 49.  While Plaintiff was on sick leave, Olson ordered an audit of her department's "scorecard" performance, which measures indicators of program quality and timeliness.  PF ¶ 51.  The audit was not a regularly scheduled audit, it found no serious issues, and it was concluded at the end of September 1998.  *Id.*    Plaintiff claims that Rogala and Hunt were not subjected to a special audit.  *Id.*

Olson accused Plaintiff and the auditor, Dennis Johnson ("Johnson"), of cheating and altering statistics at a September 28, 1998 meeting.  PF ¶ 53.  At a subsequent meeting on October 6, 1998, Olson again accused Plaintiff and Johnson of cooking the books.  PF ¶ 55.  Plaintiff testified that Olson questioned her about her relationship with Johnson and implied that she had an improper sexual relationship with him.  *Id.*

4

Olson was aware Plaintiff had contacted the EEO office in October 1998. PF ¶ 60. Plaintiff testified that Olson had constant communications with the EEO office as the Director of the CRO. *Id.* In the mid-October 1998, Olson requested a second program audit of her department's scorecard performance. PF ¶ 62. However, the audit never occurred and Olson's issues with Plaintiff's scorecard performance were resolved. DF ¶ 33.

### 2. Other Employee Conduct

In January 1999, Plaintiff contends that Olson began a concerted and continuing effort to discourage the following VA personnel from supporting her EEO claims by threatening and harassing their employment: Dr. Terrence Collins, Nick Nicholas, Barbara Quade, Jerry Braun, Bruce Holderhead, Joe Monsam, and Dennis Johnson. PF ¶ 72. Plaintiff also testified that Olson enlisted the assistance of the other following VA personnel in a campaign to harass her with false claims and accusations about her conduct and performance: Rogala, Gladys Gosa, and Rebecca Trujillo. PF ¶ 73.

### 3. Returned Report

On February 4, 1999, one day after Plaintiff complained to Olson about someone tampering with her computer, Olson returned a report to Plaintiff as "unacceptable" and required her to conduct a more extensive review. PF ¶ 74. Olson was formerly the Director of the Boston Regional Office. *Id.* Plaintiff contends the person who held her position in Boston under Olson, Rick Underwood, was not required to do such an extensive report. *Id.*

### 4. Reprimand

On April 14, 1999, Olson issued Plaintiff a reprimand, based on an incident between

Plaintiff and Rogala. PF ¶ 79. Plaintiff contends the written reprimand was based on false information. PF ¶ 80.

### 5. Program Area Review

In August 1999, while Plaintiff was on vacation, Olson requested a review of one of Plaintiff's program areas: timeliness of processing applications. PF ¶ 86. The program area had been rated third best in the nation, and Plaintiff testified that it was unusual to request such a review when Plaintiff was out of the office. *Id.*

### 6. Performance Evaluation

Rogala became aware of Plaintiff's EEO complaints in June or July 1999. PF ¶ 81. On February 4, 2000, Olson and Rogala met with Plaintiff and gave her an "unacceptable" rating for her mid-term performance evaluation. PF ¶ 89. In the meeting, Plaintiff was instructed to meet with Rogala three times per week to aid in "communication." *Id.* Plaintiff had never before been accused of having communication problems. PF ¶ 90.

### 7. Succession Priority Removal and Unacceptable Performance Warning

In late August 2000, Plaintiff learned that she had been removed from the established order of succession as Acting Director of the CRO. PF ¶ 93. On November 14, 2000, Rogala prepared and Olson issued Plaintiff a "Warning of Unacceptable Performance" that criticized Plaintiff for unacceptable job performance in human resources management. PF ¶ 95.

### 8. Within-Grade Increase Denied

In November 2000, Olson and Rogala reinstated the requirement that Plaintiff meet

with Rogala three times per week.  PF ¶ 97.  On December 13, 2000, Rogala issued an

Amended Warning of Unacceptable Performance, which notified Plaintiff that she had

performed unacceptably in two additional areas: delivery of benefits and services, and

organization support and cooperation.  PF ¶ 100.  The warning criticized her communication

abilities and indicated that if she did not improve performance in 90 days she could be

removed from federal service or demoted.  *Id.*  It also informed Plaintiff that her within-grade

increase would be denied.  *Id.*

Plaintiff did not file an EEO complaint.  Instead, she appealed the denial of her within-

grade increase to the Merit Systems Protection Board ("MSPB").  PF ¶ 102.  An

Administrative Law Judge ("ALJ") conducted a hearing and issued his decision on June 22,

2001.  *Id.*  The ALJ ruled that the VA did not present sufficient evidence of unacceptable

performance and that Plaintiff was entitled to her within-grade increase.  *Id.*  Defendant

appealed the ALJ's decision to the MSPB Board.  DF ¶ 66.  The two Board members that

reviewed the appeal could not agree on the disposition of the case.  DF ¶ 67.  Therefore, the

initial MSPB decision became the Board's final decision.  *Id.*

### 5.    Requested Accommodation

On May 24, 2001, Plaintiff was asked to go to Olson's office for a meeting regarding

her requested accommodation.  PF ¶ 106.  Plaintiff went to Olson's office to inform him that

she had a conference call to attend to and would meet with him afterwards.  PF ¶ 107.  Olson

ordered Plaintiff into his office, approached her quickly, and they had a confrontation.  *Id.*

When Plaintiff tried to sit down, she fell and had a panic attack.  *Id.*  She eventually ran out

of Olson's office. *Id.*, PF ¶ 110.

Plaintiff began seeing a psychiatrist, Dr. Farid Karimi, on October 16, 1999. PF ¶ 117. Dr. Karimi prepared an extensive report on July 30, 2003, which described the symptoms Plaintiff experienced as extreme anxiety, panic attacks, depression, decreased sleep, nightmares, and helplessness, and stated that these symptoms affected her ability to concentrate and focus. *Id.* Dr. Karimi testified that Plaintiff was going to work all through this ordeal under extreme stress and anxiety. *Id.*

## II. LEGAL STANDARDS

### A.    SUMMARY JUDGMENT STANDARD

A court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). However, the party bearing the burden of proof on an issue at trial may not rest on the pleadings, but must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S.

8

at 255.

## III.  DISCUSSION

In considering this motion for summary judgment, the Court must decide the following issues: (1) whether Plaintiff properly raised any discrimination claims; (2) whether Plaintiff failed to exhaust her administrative remedies; (3) whether Plaintiff established a *prima facie* case of retaliation under the indirect method; (4) whether Defendant presented a non-invidious reason for its actions; and (5) whether there is evidence that Defendant's proferred reason is pretextual.

## A.  PLAINTIFF HAS FAILED TO RAISE ANY DISCRIMINATION CLAIMS

In Plaintiff's response to Defendant's motion for summary judgment, she asserts claims of disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701, and gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a).  Neither claim is set forth in Plaintiff's complaint.

A plaintiff may not amend her complaint through arguments in her brief in opposition to a motion for summary judgment.  *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) ("[Plaintiff] could not amend her complaint through allegations made in response to a motion for summary judgment").  In this case, Plaintiff's complaint alleges neither gender discrimination nor disability discrimination claims.  In light of *Shanahan* and *Griffin*, Plaintiff cannot amend her complaint through arguments raised in her response brief.  At oral argument, Plaintiff's counsel acknowledged that this case involves only claims for retaliation, not discrimination.

9

**B. PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES ON ONE OF HER TWO CLAIMS**

Plaintiff alleges receiving two adverse employment actions in retaliation for having engaged in protected activity: (1) the denial of a within-grade pay increase, and (2) a hostile work environment. Defendant asserts that Plaintiff failed to exhaust her administrative remedies. Therefore, the issue of whether Plaintiff exhausted her administrative remedies will be reviewed prior to addressing the merits.

From the time Plaintiff filed her second formal EEO complaint on March 31, 1999, until the time she contacted an EEO counselor on July 13, 2001, Plaintiff did not contact an EEO counselor within 45 days of any retaliatory employment actions, with the exception of her allegation that the denial of her requested accommodation was retaliatory. Plaintiff does not dispute this; she merely states that she "engaged in protected activity on several occasions between March 31, 1999 and July 13, 2001." Def. 56.1 Stmt & Pl. Resp. ¶ 78.

Defendant argues that because Plaintiff did not contact an EEO counselor between March 31, 1999 and July 13, 2001, she failed to exhaust her administrative remedies. Therefore, Defendant asserts, all claims relating to the actions that occurred during that time period, including the denial of Plaintiff's within-grade pay increase, must be dismissed. Defendant argues that Plaintiff was subjected to neither a hostile work environment nor a continuing violation. Defendant contends that Plaintiff's retaliatory hostile work environment claims were disjointed, separate acts, and thus Plaintiff was required to contact

an EEO counselor for each.[3]

Plaintiff claims that she was not required to make a separate complaint for each incident because she was subjected to ongoing harassment and a hostile work environment. Plaintiff argues that the time limit for contacting an EEO counselor may be waived when the plaintiff alleges a series of related discriminatory acts, one of which falls within the time period for contacting an EEO counselor. Plaintiff also claims that it was immaterial that Plaintiff never contacted an EEO counselor within forty-five days of her within-grade pay increase denial because she had earlier filed an EEOC complaint.

Federal employees asserting Title VII claims must timely exhaust their administrative remedies before they may assert their claims in a lawsuit. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). One administrative remedy involves contacting an EEO counselor. Pursuant to 29 C.F.R. § 1614.105(a)(1), an aggrieved employee must initiate contact with an EEO counselor within forty-five days of the date of the alleged discriminatory act or, in the case of personnel action, within forty-five days of the effective date of the action. The regulations provide certain limited exceptions to the forty-five day time limit that are not involved in this case. 29 C.F.R. § 1614.105(a)(2). In the Seventh Circuit, the forty-five day

---

[3] Defendant cites two cases, *Johnson v. Runyon*, 47 F.3d 911 (7th Cir. 1995), and *McSwain v. Runyon*, 990 F.Supp. 1001 (N.D. Ill. 1998), in its argument that Plaintiff failed to meet the forty-five day deadline and is thus barred from bringing such claims. In both cases, the plaintiff invoked 29 C.F.R. § 1614.105(a)(2) and argued that the forty-five day time limit should have been extended. In this case, Plaintiff does not invoke 29 C.F.R. § 1614.105(a)(2) to claim that she was somehow prevented from timely contacting an EEO counselor. Therefore, *Johnson*, *Runyon*, and 29 C.F.R. § 1614.105(a)(2) do not apply.

deadline to seek EEO counseling is construed as a statute of limitations, not as a jurisdictional requirement. *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995).

In *National R. R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court addressed the issue of administrative timeliness for a discrete act versus a hostile work environment claim in light of 42 U.S.C. § 2000e-5(e)(1)'s requirement that a Title VII plaintiff must file a charge with the EEOC either 180 or 300 days after the alleged unlawful employment practice occurred. The Court held, "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Morgan*, 536 U.S. at 113. The Court also stated that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 111.

By contrast, the Court found that a hostile work environment claim is composed of a series of separate acts that collectively amount to one unlawful employment practice. *Id.* at 117. Therefore, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* The Court thus concluded, "Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge

12

to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Notwithstanding the rules set forth in *Morgan*, an exception to the failure to exhaust administrative remedies requirement exists for retaliation claims in the Seventh Circuit. If the alleged retaliation claim arose after the EEOC charge was filed, the plaintiff need not file another EEOC charge. *McKenzie v. Illinois Dep't of Transportation*, 92 F.3d 473, 482-483 (7th Cir. 1996); *see also Horton v. Jackson County Bd. of County Comm'rs*, 343 F. 3d 897, 898 (7th Cir. 2003) ("[R]etaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint). However, the retaliation claim must also be (1) similar or reasonably related to the allegations in the EEOC charge and (2) grow out of those allegations. *McKenzie.* at 481-482. This exception for later-filed retaliation claims is policy-driven; namely, a desire to avoid needless, repetitious procedure. *Id.* at 482.

*McKenzie* is the leading case on the exception and its rules are straightforward. However, *McKenzie* was decided before *Morgan*. Thus, *Horton*, which came after *Morgan* and also cited *McKenzie*'s exception, stated that, "And here we should note that the doctrine predates *[Morgan]* which, though principally about the continuing-violation doctrine, is emphatic that 'each discrete discriminatory act [i.e. an act that is not part of a continuing violation] starts a new clock for filing charges alleging that act.'" *Id.* at 899-900. *McKenzie* appears to be good law and the retaliation exception was cited recently in *Eruteya v. City of Chicago*, No. 04 C 1482, 2005 WL 563213, at *4 (N.D. Ill. Mar. 9, 2005) ("[T]he Seventh

Circuit has held that a plaintiff is allowed to bring a retaliation claim, even if that claim is not included in the EEOC charge, if the plaintiff alleges that the retaliation occurred *after* the filing of the EEOC charge). However, *Morgan* casts some doubt on the *McKenzie* exception.

### 1.    Denial of Plaintiff's Within-Grade Pay Increase

Under both *Morgan* and *McKenzie*, Plaintiff failed to exhaust her administrative remedies for the denial of her within-grade pay increase. The denial was certainly a discrete act and is therefore time-barred under *Morgan* because Plaintiff did not timely contact an EEO counselor or file a charge.

Plaintiff also fails under the *McKenzie* exception because the denial of her within-grade pay increase claim (1) is not reasonably related to the allegations in her earlier-filed EEOC charges, and (2) it does not grow out of those allegations. The Seventh Circuit has held:

> this standard is met 'if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.... The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.'

*McKenzie*, 92, F.3d at 481 (quoting *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994).

Plaintiff began the EEO complaint process by contacting an EEO counselor on October 6, 1998 because of problems she was having with Olson. She then filed a formal EEO complaint on November 10, 1998 ("EEO Complaint I"). In EEO Complaint I, Plaintiff

alleged sex and disability discrimination and retaliation, which she claimed were evidenced by harassment, continuing violations, hostile work environment, duty hours, and failure to provide reasonable accommodations. Plaintiff contacted another EEO counselor on February 9, 1999 regarding conduct by Olson that Plaintiff felt was harassing.

On March 31, 1999, Plaintiff filed a second formal EEO complaint ("EEO Complaint II"). In EEO Complaint II, Plaintiff again alleged sex and disability discrimination and retaliation, which she claimed were evidenced by harassment, assignment of duties, and failure to provide reasonable accommodations. Plaintiff filed her EEO complaint in response to Olson returning a report to Plaintiff as unacceptable and requiring her to conduct a more extensive review. The denial of Plaintiff's within-grade pay increase occurred in December 2000, some twenty-one months later. According to Olson, the denial stemmed from poor communication by Plaintiff. Rogala issued the Amended Warning of Unacceptable Performance that notified her of the denial. Plaintiff met with Olson about the denial in January of 2001.

The denial of Plaintiff's within-grade increase occurred more than a year and a half after EEO Complaint II. The two events involve Olson, but the within-grade increase denial could not reasonably be expected to grow out of the EEOC investigation for the March 31, 1999 complaint that occurred more than a year and a half earlier. Besides the fact that Olson, her supervisor, was involved in each incident, there is not enough of a factual relationship between the claims to find that they are reasonably related. The within-grade increase denial was a separate and distinct act from her EEO charge.

15

Moreover, when Plaintiff learned of her within-grade increase denial, she appealed it to the MSPB instead of going to the EEO office. Plaintiff had already filed two EEO charges in the preceding three years, but for this action, a distinct action by her supervisor enacted because of alleged poor job performance, she went to the MSPB to dispute it on the merits. Furthermore, Plaintiff raised the issue of retaliation as an affirmative defense in her MSPB proceeding, and the ALJ found that such an allegation was not sustained. Def. App. Ex. 3.

Plaintiff failed to timely contact the EEO for the denial of her within-grade increase, and thus that claim fails due to Plaintiff's failure to exhaust her administrative remedies. However, in the interests of completeness in the event of an appeal, the Court will consider Plaintiff's denial of within-grade pay increase claim on the merits in the retaliation discussion below.

## 2.     Hostile Work Environment

Plaintiff's hostile work environment claim involves the same personnel, and many of her assertions allege similar behavior that occurred at her place of employment. This discussion is further developed below in the Court's analysis of whether Plaintiff set forth a valid retaliation claim under the indirect method. Applying the rules and reasoning regarding the EEOC charge deadline from *Morgan* to the instant case and the issue of the 45-day time limit, this Court finds that Plaintiff did not fail to exhaust her administrative remedies for her hostile work environment claim so long as she contacted an EEO counselor within 45 days of any incident that she alleges helped create a hostile working environment.

In early February 1999, Olson returned as unacceptable an internal control review report Plaintiff had submitted. Plaintiff was required to redo the report in a more extensive manner. She claims another VR&E officer was not required to complete such an extensive report. Plaintiff contacted an EEO counselor on February 9, 1999 regarding this incident. In her complaint, Plaintiff alleges both disparate treatment and harassment from Olson in the form of unacceptable reviews he gave her. Therefore, Plaintiff timely contacted an EEO counselor for one of the incidents that she alleges contributes to her hostile work environment claim. Plaintiff's hostile work environment claim will be decided on the merits

## C.     RETALIATION

Plaintiff alleges that Defendant unlawfully retaliated against her in violation of Title VII and the Rehabilitation Act. The retaliation provision of the Rehabilitation Act is materially identical to the one in Title VII. *Twisdale v. Snow*, 325 F.3d 950, 952 (7th Cir. 2003). There are two ways for Plaintiff to establish a *prima facie* case for unlawful retaliation to avoid summary judgment in favor of the employer.

### 1.     Two Methods Used to Establish a Retaliation Case

In *Stone v. City of Indianapolis Public Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002), the Seventh Circuit clarified the standards for summary judgment on unlawful retaliation claims. There are two distinct ways for a plaintiff to establish a *prima facie* case for unlawful retaliation and avoid summary judgment. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 559 (7th Cir. 2004). The plaintiff must present either direct evidence of discrimination or indirect evidence under the burden-shifting analysis set forth in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005).

### a.    Direct Evidence

The direct evidence method is straightforward and unrelated to *McDonnell Douglas*. *Stone*, 281 F.3d at 644.  The plaintiff must "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [the plaintiff] engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains."  *Id.*  Plaintiff does not possess direct evidence of discrimination.

### b.    Indirect Evidence

Under the indirect evidence approach, the plaintiff must first establish a *prima facie* case of retaliation by demonstrating: (1) she engaged in protected activity, (2) she was then subjected to an adverse employment action, (3) even though she was performing her job satisfactorily, and (4) no similarly situated employee who did not engage in protected activity was subjected to the adverse employment action. *Mannie*, 394 F.3d at 984.  The burden then shifts to the defendant employer to produce evidence of a non-invidious reason for the employment action at issue.  *Id.*  If the employer presents such evidence, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual.  *Id.*

### c.    Causal Link

Previously under the indirect evidence method, the plaintiff was also required to establish a "causal link" between the adverse employment action and the protected activity. *Id.*  In *Stone*, however, the Seventh Circuit "held that plaintiffs seeking to prove retaliation

under the indirect method need not show 'even an attenuated causal link.'" *Id.* (quoting *Stone*, 281 F.3d at 643-644). Notwithstanding the holding in *Stone*, the Seventh Circuit stated in *Mannie* it was "[m]indful that some confusion remains," and thus it "clarif[ied] again that no 'causal link' is necessary under the indirect method." *Mannie*, 394 F.3d at 984.

### 2. Plaintiff Has Not Established a *Prima Facie* Case of Retaliation Under the Indirect Method.

Plaintiff asserts that she has submitted sufficient evidence to establish a *prima facie* case of retaliation under the indirect evidence method. The Court will consider whether such sufficient evidence exists under the burden-shifting analysis set forth above.

### a. Plaintiff First Engaged In Protected Activity in July 1997.

Plaintiff claims she engaged in protected activity under Title VII in 1997 when she submitted an informal complaint to Montgomery Watson, Director of the CRO and Plaintiff's second-level supervisor at the time, alleging discrimination with respect to her pay and grade level. Next, she claims that her testimony on August 3, 1998, for Ramza in support of his formal EEO complaint also constitutes protected activity under Title VII.

Defendant argues that the earliest possible protected activity engaged in by Plaintiff occurred on September 28, 1998, when she returned to work after her one and a half month absence and provided Olson with a list of complaints about McCourt, which Olson then forward to Defendant's EEO office. Therefore, Defendant claims, even if Plaintiff could demonstrate that an adverse employment action transpired prior to September 28, 1998,

Plaintiff could not establish that such an action was retaliatory.

To establish that she engaged in protected activity, Plaintiff must demonstrate that she complained about an act that she reasonably believed in good faith violated Title VII. *Firestine v. Parkview Health System, Inc.*, 388 F.3d 229, 234 (7th Cir. 2004). Even if Plaintiff was mistaken regarding the merits of a complaint, that would not cost her the protection of Title VII. *Id.* In fact, "[o]nly a groundless claim 'resting on facts that no reasonable person possibly could have construed as a case of discrimination' could not constitute a statutorily protected activity." *Id.* (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002)). Informal complaints to supervisors may constitute protected activity. *Maldonado v. Metra*, 743 F.Supp. 563, 568 (N.D. Ill. 1990). Furthermore, "participation as a witness for a co-worker's claim of discrimination under Title VII constitutes protected activity." *Grana v. Illinois Dept. of Transp.*, 232 F. Supp. 2d 879, 885 (N.D. Ill. 2002).

In this case, Plaintiff approached Michael Bates, the EEO program manager, in July 1997 to complain about unequal pay. She was the only VR&E officer out of fifty-seven being paid at the GS-13 level. There were also only two female VR&E officers including her, and the other woman had just been promoted to GS-14. Plaintiff thus complained to Bates. She also complained to McCourt and Watson. While her complaint to them was based on the Equal Pay Act, she felt it was gender discrimination and that is why she took the issue to the EEO program manager. She brought documentation of the discrepancy to Bates and Watson, and she was soon thereafter promoted to GS-14. In light of the liberal

standard for protected activity set forth above, the Court finds that Plaintiff's informal complaint to the EEO program manager and her director constitute protected activity. Therefore, Plaintiff's earliest protected activity is her pay discrepancy complaint in July 1997.

        **b.**      **Plaintiff Was Subjected to a Denial of Her Within-Grade Pay Increase; She Was Not Subjected to a Hostile Work Environment.**

Plaintiff claims that she was subjected to two adverse employment actions. First, she states that she was subjected to a hostile work environment. Next, she asserts that she was unjustifiably denied a within-grade pay increase.[4] Defendant does not dispute that the denial of her within-grade pay increase constitutes an adverse employment action. Instead, Defendant provides reasons to explain why the denial occurred, which are set forth below. Defendant does argue that Plaintiff was not subjected to a hostile work environment. Defendant contends that Plaintiff has strung together a variety of separate incidents that occurred over several years and they do not amount to a hostile work environment.

To constitute an adverse employment action, the act must "materially alter the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). An alteration in the terms and conditions of a plaintiff's employment is established by demonstrating either a tangible or non-tangible employment action. *Mannie*, 394 F.3d at 982. A discharge or demotion constitutes a tangible action, whereas discriminatory conduct

_____

[4] Even though Plaintiff failed to exhaust her administrative remedies for her denial of within-grade increase claim and thus this claim is dismissed, the Court will consider the issue on its merits for completeness.

so severe or pervasive to create an "abusive" working environment amounts to a non-tangible action. *Id.* Therefore, an employee is subject to a hostile work environment when that employee "experiences harassment that is 'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). The plaintiff must also show "that the workplace was both subjectively and objectively hostile." *Mannie*, 394 F.3d at 982. "In other words, the environment must be 'one that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so.'" *Smith v. Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir. 2004) (quoting *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002)).

Plaintiff sets forth a lengthy list of incidents in her response brief in her attempt to show that Defendant's conduct was so severe or pervasive that it created an abusive working environment. She cites to even more events described in her statement of facts. The Court will address several of the most pertinent allegations, but it will not discuss each action, many of them minor or typical employment issues, that Plaintiff has alleged.

In the Seventh Circuit, Plaintiff's allegations do not amount to a hostile work environment because no factual basis exists for some of her allegations, and the incidents that are factually supported do not collectively constitute a hostile work environment as a matter of law. Several cases have addressed this issue and it is clear that more is needed than a laundry list of incidents that may have upset Plaintiff. As the court in *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996), stated when it affirmed the district court's grant

of summary judgment for the employer, "not everything that makes an employee unhappy is an actionable adverse action." The incidents Plaintiff complains of involve her job duties and her relationship with her superiors. She makes numerous conclusory allegations that she was harassed, and the facts she sets forth do not constitute a hostile work environment.

### (1)     Audits, Negative Reviews, and Criticism

Accusing Plaintiff of unprofessional behavior at the workplace, ordering audits and reviews of her department, and criticizing her and giving her negative reviews are regular workplace occurrences that fall short of constituting an adverse employment action. In *Twisdale*, 325 F.3d at 951, the plainitff alleged that audits of some of the programs he administered, a delay in giving him prized "acting supervisor" assignments, and "above all the removal from his purview of the Disclosure Office, which had three employees and [was] responsible for protecting taxpayers' privacy, and of the Problem Resolution Program, a program for dealing with taxpayer complaints" constituted an adverse employment action. The Seventh Circuit, however, affirmed the district court's grant of summary judgment for the employer and found that such "unpleasantness ... falls short of the level of severity required to trigger judicial intervention under Title VII." *Id.* at 953. The Seventh Circuit noted that Title VII "does not protect the hypersensitive employee who is not deliberately targeted by the employer from the irritations endemic to the employment relation." *Id.*; *see also Young v. Will County Dep't of Public Aid*, 882 F.2d 290, 294 (7th Cir. 1989) (affirming the district court's grant of summary judgment for the employer and finding that the withholding of a salary increase, unfavorable work evaluations, and the supervisor referring

older employees to a manual for answers do not in combination create a hostile work environment).

(2)      **Threats and Improper Sexual Relationship Allegations**

Plaintiff also alleges that Olson threatened her and falsely accused her of an improper sexual relationship with an auditor. Regarding the threats, "it is well established that unfulfilled threats that result in no material harm cannot be considered an adverse employment action under Title VII." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1029 (7th Cir. 2004) (affirming the district court's grant of employee's motion for summary judgment and denial of employee's cross-motion for partial summary judgment ). Next, the allegation of Olson making the sexual relationship comment is unsubstantiated and appears to be conjecture. Plaintiff's basis for believing Olson falsely accused her of having such a relationship with Johnson stems from, according to Plaintiff, Olson repeatedly asking her about her relationship with him. Pl. App. Ex. 3 at 144-145. Olson never actually accused her of having a sexual relationship. Moreover, Plaintiff indeed had a prior business relationship with Johnson, and she was formerly his mentor. In *Mannie*, the plaintiff "assert[ed] that her supervisors made derogatory statements about her, discussed her mental condition with other employees, and paged her to return from cigarette breaks," and the Seventh Circuit found such allegations insufficient to establish a hostile work environment. 394 F.3d at 982-983.

Plaintiff also claims that McCourt made statements to VA employees implying that Kruger had an improper sexual relationship with Ramza. Again, this is unsubstantiated and

appears to be conjecture. Plaintiff testified that she learned of the alleged statements from Ramza. She testified, "I think it was an innuendo sort of thing, like, 'You sure had a close personal relationship with - - the VR&E officer.' [Ramza] didn't like the implication." Pl. App. Ex. 3 at 88-89. She also said that Ramza did not mention whether there were any witnesses. Plaintiff confronted McCourt about the statement, but she did so more on Ramza's behalf. She did not contact anyone at EEO. Plaintiff relies on "innuendo" and hearsay from Ramza in her allegation that such a statement was ever made. In a light most favorable to Plaintiff, McCourt hinted to Ramza via innuendo that he and Plaintiff had a sexual relationship. In light of *Mannie* and the instant facts, such a comment does not materially alter the terms and conditions of Plaintiff's employment, and thus does not establish a hostile work environment.

### (3)     Seniority List and Promotion Track Issues

Plaintiff also claims that Olson replaced her in the order of seniority at the CRO and pushed her off the track for promotion to GS-15. The assertion that Olson pushed her off her promotion track stems from negative performance reviews he gave her. As stated above, unfavorable work evaluations do not amount to an adverse employment action. Next, replacing her in the order of seniority is also not enough to create a hostile work environment. As the Seventh Circuit found in *Hottenroth*, "[a supervisor's] refusal to recommend [the plaintiff] for certification as a journeyman-lineman, based on a belief that [the plaintiff] was not qualified due to her poor job performance and out-of-control behavior, was properly within [the supervisor's] discretion, and thus did not constitute an adverse

employment action." 388 F.3d at 1031. The court further noted, "we have repeatedly held that even the denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary. *Id.* (citations omitted).

### (4) Discouraging Support for Plaintiff's EEO Claims

Plaintiff also claims that Olson discouraged other VA personnel from supporting Plaintiff's EEO claims. These claims, however, are unsubstantiated conjecture. For example, Plaintiff alleges that Olson discouraged Dr. Terry Collins from supporting her claim after Dr. Collins provided information to an EEO counselor. Plaintiff claims she was at a meeting in Des Moines, Iowa when the assistant director, Nick Nicholas, "pretty much led a discussion that was humiliating to Dr. Collins and ultimately said the directors wanted Dr. Collins to be out of the leadership position." Pl. App. Ex. 3 at 206-207. Plaintiff stated that there was nothing said by Nicholas regarding her EEO case, and the only thing that led her to believe what was said about Dr. Collins related to her EEO case was the timing. *Id.* at 208. Moreover, Plaintiff said that Nicholas was the only one that made humiliating statements regarding Dr. Collins' leadership and she could not say that Olson directed Nicholas to make such statements. *Id.* at 208-209. The evidence Plaintiff gives for another employee she claims was threatened, Barbara Quade, is that the employee was audited twice and had contracts cancelled. *Id.* at 212-213. Audits and cancelled contracts are typical workplace occurrences. Moreover, Quade was in a different department in a different city

than Plaintiff. Plaintiff also does not know who requested the two audits.

### (5) Enlisting Others to Retaliate

Plaintiff also claims that Olson enlisted other VA personnel in retaliatory efforts against her. She claims that Olson directed Rogala to complain about her conduct and issue a bad report about her so Olson could issue her a reprimand. Pl. App. Ex. 3 at 226-36. Again, this is speculation. The underlying activity involved an employee who wished to see a specific counselor who was no longer an employee of the VA. Plaintiff conferred with Rogala as to the policy for the request. Plaintiff claims that Rogala accused her of lying and complained about her conduct, which he described as poor communication, to Olson. Olson then issued a reprimand, and Plaintiff now claims Rogala was enlisted by Olson to complain about her conduct. As proof, Plaintiff claims that Rogala was promoted to assistant director within a week after the issuance of her reprimand. Yet Plaintiff made the following statement in her deposition, "Now, can I say that [the promotion] had anything to do with [the reprimand]? Absolutely not." Pl. App. Ex. 3 at 232.

Rogala also contacted one of Plaintiff's employees directly because of errors found in an audit. Rogala asked the employee to correct the errors and the employee corrected them. Nothing resulted from this incident that affected Plaintiff, but she cites it as proof of Rogala being enlisted by Olson to retaliate against her. Plaintiff is again speculating, and regardless, a dispute over an audit and potential errors in a report are typical employment actions. Lastly, Plaintiff claims that Rogala, at Olson's direction, retaliated against her by giving her an "unacceptable" mid-year appraisal. Plaintiff again offers no evidence other

than her speculation for this assertion.

Plaintiff provides many conclusory assertions and much of her offered evidence consists of speculation and conjecture. The Seventh Circuit has clearly stated that "[c]onclusory allegations by the party opposing the motion [for summary judgment] cannot defeat the motion." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Moreover, unsupported speculation "does not meet a party's burden of producing some defense to a summary judgment motion." *Id.* at 931-932. Speculation by a party "does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id.* at 932.

The incidents Plaintiff provides to this Court do not amount to a hostile work environment. They deal with the management functions of employment, and do not create an abusive working environment. She also makes conclusory allegations, which hold no weight. In the end, like other courts have found, Plaintiff was not happy with her situation, but she was not subject to a hostile work environment. *E.g. Stutler*, 263 F.3d at 704 ("We have no doubt that the environment was unpleasant, but none of the conduct complained of constituted the material harm necessary for a Title VII retaliation claim"); *Grana*, 232 F. Supp. 2d at 887 ("Although [the plaintiff] may have felt uneasy and hurt, [his supervisors'] actions fall short of adverse employment action. [The plaintiff] may not enjoy his current situation, but a less-than-desirable rapport with his supervisors does not constitute an adverse employment action."). Therefore, viewing the facts in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that the conduct and actions were

severe enough to rise to the level of a hostile work environment.  The only adverse employment action Plaintiff was subject to was the denial of her within-grade pay increase.

### c.  Plaintiff's Job Performance.

The issue of whether Plaintiff performed her job satisfactorily was not given much attention by the parties in their briefs.  The issue possesses more relevance and significance when discussed below regarding whether Defendant's reasons for the actions taken were pretextual.  *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) ("As we have pointed out on several occasions, this issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext").

### d.  Plaintiff Failed to Establish That Other Similarly Situated Employees Who Did Not Engage In Protected Activity Were Subjected To The Adverse Employment Action.

The fourth element Plaintiff must prove in order to establish a *prima facie* case of retaliation under the indirect method is that no similarly situated employee who did not complain about discrimination or file an EEO charge was subjected to the adverse employment action.  *Mannie*, 394 F.3d at 984.  Notwithstanding the Court's finding that Plaintiff was not subjected to a hostile work environment, for completeness, the Court will consider this element in light of both adverse employment actions that Plaintiff alleged.

Plaintiff argues that Carolyn Hunt ("Hunt"), Dave Stelsner ("Stelsner"), Rick Underwood ("Underwood"), Rogala, Lyle Stratton ("Stratton"), and Ramona Garnier ("Garnier") were similarly situated employees who did not engage in protected activity and

were not subjected to a hostile work environment or denied a within-grade pay increase. Plaintiff also claims that the testimony of Michael Bates ("Bates") and Chrissy Carr ("Carr") helps her meet this prong. Defendant argues that Plaintiff failed to support her conclusory assertions concerning these individuals with specific facts or probative evidence.

A similarly situated employee is someone who is directly comparable to the plaintiff in all material respects. *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003). When determining whether two employees are directly comparable, a court must look "at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

### (1)    Michael Bates

Bates was a Management Analyst at the CRO, a GS-12 position. He retired from the VA on October 31, 1997. He testified that McCourt "targeted" Kruger by "paying a good deal of scrutiny to what was happening in her division in terms of personnel, it seems to me when questions came up about overtime, money, and things along that line." Pl. App. Ex. 6 at 58. When asked why he thought McCourt scrutinized Plaintiff more closely, Bates replied, "I think he thought an inordinate importance was given to voc[ational] rehab[ilitation], to disabled veterans in general...." *Id.* Bates also testified that McCourt "cut slack" for the loan guarantee officer as well as the administrative officer when he was at the

VA. *Id.* at 18.

Plaintiff does not argue that Bates was treated differently. Instead, she only offers his testimony, which offers nothing substantive. Bates left the VA in 1997. Most importantly, Bates does not provide specific evidence. He merely states that a loan guarantee officer and an administrative officer were cut some slack, and separately, Plaintiff was scrutinized over issues like money and overtime, which are important administrative issues. Bates does not establish that other similarly situated employees who did not engage in protected activity were not subjected to a hostile work environment or denied a within-grade pay increase.

### (2)    Chrissy Carr

Carr was Plaintiff's coworker and she thought McCourt was harder on Plaintiff than other employees. Carr stated that McCourt had an overbearing, boorish, and offensive management style. She said McCourt yelled at Plaintiff in his office more than he yelled at other employees. Carr left the VA in January 1998.

Similar to Bates, Plaintiff does not argue that Carr was treated differently. Instead, she only offers Carr's testimony, which offers nothing substantive. Carr left the VA in early 1998. Most of Plaintiff's retaliation claim stems from events that transpired subsequent to Carr's departure. If anything, Carr's testimony establishes that McCourt was an offensive, overbearing manager before Plaintiff engaged in protected activity. Carr does not establish that no similarly situated employees who did not engage in protected activity were subjected to a hostile work environment or denied a within-grade pay increase.

### (3)    Carolyn Hunt and Dave Stelsner

Plaintiff claims that after she referred Ramza for the computer specialist position, she was not provided any executive development and management training. However, Plaintiff argues that Hunt, CRO service center manager, and Stelsner, SRO assistant service center manager, were CRO managers at the same level and time who were provided such training. Plaintiff also asserts that Hunt and Stelsner never filed EEO complaints against McCourt, Olson, or Rogala.

Plaintiff provides no evidence that Hunt and Stelsner were directly comparable to her in all material respects. She merely states in her response brief that they were "at the same level as [Plaintiff]," and cites to her statement of additional material facts as evidence. Pl. Mem. at 8. In her statement of additional material facts, she again refers to Hunt and Stelsner as "[o]ther CRO managers at the same level as [Plaintiff]" and cites to her deposition transcript for evidentiary support. PF ¶ 19. Finally, her deposition transcript provides her testimony, which merely provides the names and titles of Hunt and Stelsner, says they were provided training, and refers to them as "other managers within the office." Pl. App. Ex. 3 at 80.

Plaintiff must present specific evidence showing she was similarly situated to the employees she alleged received more training. *Pafford v. Herman*, 148 F.3d 658, 668 (7th Cir.1998) (affirming the district court's grant of summary judgment for the employer). As the Seventh Circuit stated in *Pafford*, "[t]he mere fact that other employees may have received more training than [the plaintiff] falls short of raising an inference of discrimination." *Id.*

In this case, Plaintiff has presented no evidence that Hunt and Stelsner were directly comparable to her in all material respects. Plaintiff has merely offered her own conclusory allegation. Furthermore, the denial of training opportunities does not constitute an adverse employment action. *Needy v. Vill. of Woodridge*, No. 96 C 5188, 1997 WL 461093, at *6 (N.D. Ill. Aug. 8 1997) (granting in part and denying in part defendants' motions for summary judgment and finding that "reprimands and deprivations of training opportunities do not constitute an adverse employment action under Title VII").

### (4)    Rick Underwood

On February 4, 1999, Olson returned an internal review control report to Plaintiff that she submitted to him. Olson said it was unacceptable and asked Plantiff to do an additional report on more program areas. Prior to coming to the CRO, Olson was the Director of the Boston Regional Office and Underwood, like Plaintiff, was the VR&E department head. Plaintiff claims that Underwood was not required to do such an extensive report.

Plaintiff has again failed to establish the similarly situated prong with her allegation involving Underwood. First, a supervisor requiring an employee to provide a more extensive report is not an adverse employment action; it does not "materially alter the terms and conditions of employment." *Stutler*, 263 F.3d at 703; *see also Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998) (affirming the district court's grant of summary judgment for the employer and finding that neither a performance exam nor a supervisor's assessment of an employee's skills constitutes an adverse employment action). Second, Plaintiff merely states that Underwood had her same position under Olson in Boston.

She offers nothing more to show they are directly comparable in all material respects. And third, Plaintiff does not provide any specific evidence, other than her conclusory allegation, that she has any personal knowledge or knows anything about the extensiveness of Underwood's reports under Olson. Rule 56(e) of the Federal Rules of Civil Procedure mandates that affidavits supporting or opposing motions for summary judgment must 1) be made with personal knowledge; 2) set forth facts that would be admissible into evidence; and 3) show affirmatively that the affiant is competent to testify on such matters. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 736 (7th Cir. 2001). For these reasons, Underwood does not establish that no similarly situated employees who did not engage in protected activity were subjected to a hostile work environment or denied a within-grade pay increase.

### (5)    Ronald Rogala

Prior to April 1999 when Rogala was a division chief under Olson's supervision, Plaintiff claims that Olson treated other CRO department heads, including Rogala, more favorably than Plaintiff. Plaintiff alleges that Olson did not subject Rogala's department to any special audits or reviews, despite his department's scorecard ratings being at or below Plaintiff's. Plaintiff also claims that while she was removed from the order of succession at the CRO, Rogala was not removed.

Again, Plaintiff fails to show the Court that she and Rogala were similarly situated. Plaintiff claims Rogala was a division chief under Olson's supervision prior to 1999. Plaintiff offers the Court nothing more to demonstrate that Rogala was directly comparable to her in all material respects. Notwithstanding Plaintiff's failure to show she and Rogala

were similarly situated, as described above, ordering an audit is not an adverse employment action. *Twisdale v. Snow*, 325 F.3d at 953.

Regarding her removal from the order of succession, this event transpired in August 2000. By that time, Rogala was the Assistant Director and Plaintiff's supervisor and thus the two could not have been similarly situated. Regardless, removing an employee from the order of succession does not materially alter her terms and conditions of employment and is thus not an adverse employment action. *See, e.g., Hottenroth*, 388 F.3d at 1031; *Twisdale*, 325 F.3d at 953.[5]

### (6) Lyle Stratton and Ramona Garnier

Plaintiff claims that "unlike [her], other VA employees who complained about computer tampering, including Lyle Stratton and Ramona Garnier, did not receive letters of counseling." Pl. Mem. at 9. Plaintiff offers no evidence to even attempt to show that she and either Stratton or Garnier are similarly situated.

Plaintiff cannot satisfy the similarly situated prong and thus she has failed to establish a *prima facie* case of retaliation. With Bates and Carr, Plaintiff merely presented their testimony, without any specific evidence, that they thought Plaintiff was treated differently.

---

[5] Plaintiff also claims that Hunt's department was not subjected to any special audits or reviews, despite her department's scorecard ratings being at or below Plaintiff's, and while Plaintiff was removed from the order of succession at the CRO, Hunt was not removed. As stated above, however, such a removal does not constitute an adverse employment action, and neither does an audit or review. Moreover, Plaintiff has not shown that Hunt was a similarly situated employee. Therefore, this allegation also fails to meet the similarly situated prong.

Regarding the other six individuals, Plaintiff failed to present a single, cogent argument that any of them were indeed similarly situated to Plaintiff. Plaintiff couched her argument in conclusory allegations without directing the Court to specific evidence. Regardless, the Court followed Plaintiff's citations from her brief to her statement of facts to Plaintiff's deposition to see if such evidence exists. The Court found none.

Under the similarly situated prong, Plaintiff only discussed separate, minor employment actions that this Court has found do not collectively amount to a hostile work environment. Plaintiff did not even discuss the denial of her within-grade pay increase in the context of similarly situated employees. Plaintiff failed to demonstrate that no similarly situated employee who did not complain about discrimination or file an EEO charge was subjected to the adverse employment action. Plaintiff did not establish a *prima facie* case of retaliation.

### 3. Defendant Presented Evidence Of A Non-Invidious Reason For Denying Plaintiff's Within-Grade Pay Increase.

Had plaintiff been able to establish a *prima facie* case of retaliation, the burden would then shift to Defendant to present evidence of a non-invidious reason for the adverse employment action. *Mannie*, 394 F.3d 984. For completeness, the Court will consider this issue. Defendant focuses its argument on the denial of Plaintiff's within-grade pay increase. Therefore, in her response, Plaintiff also addresses the pay increase denial. Even though the denial of Plaintiff's within-grade increase was not timely filed, it was the only adverse employment action Plaintiff was subject to, and thus the Court will address this issue on the

merits, as stated above, for completeness.

Defendant argues that Olson's testimony at the MSPB Board hearing that he denied Plaintiff's within-grade pay increase because she failed to communicate with Rogala and himself constitutes a non-invidious reason for the employment action. At the hearing, Olson provided various examples of Plaintiff's failures to communicate. In one example, he described how he became aware that one of Plaintiff's employees traveled to a national meeting only after learning it from someone in Washington, D.C., and then after questioning Plaintiff about the matter, Olson concluded that she lied to him about her prior knowledge of the trip. Def. App. Ex. Olson MSPB Testimony at 183-184. In another instance, Olson explained that Plaintiff failed to inform him that a company she was working with was having problems with the CRO, and, again, Olson first learned of the problems when the director of VR&E service in Washington D.C. called him. *Id.* at 174-176. Olson also explained how Plaintiff failed to advise him of a lengthy delay in reclassifying two of her employees' positions to the GS-10 level. *Id.* at 184-186. Lastly, Olson testified that Plaintiff neglected to tell him that an employee at an out-base office was retiring, and he ended up learning of the retirement from human resources. *Id.* at 184.

The Seventh Circuit has explained that "[t]he reason provided for the adverse action can be 'good or bad, provided only that it is not one that the law forbids.'" *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004) (quoting *Stone*, 281 F.3d at 642). In light of Olson's testimony that he denied her within-grade pay increase because of her poor communication, the Court finds that Defendant has presented a legitimate, non-invidious

reason for the pay increase denial.

### 4. Plaintiff Did Not Demonstrate That Defendant's Proferred Reasons Are Pretextual.

Since Defendant met its burden of providing a non-invidious reason for the pay increase denial, the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reason is pretextual. *Mannie*, 394 F.3d at 984.

To demonstrate that a material issue of fact as to pretext exists, "a plaintiff must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Hudson*, 375 F.3d at 561. However, "[p]retext is more than a mistake on the part of the employer; it is a phony excuse." *Id.* "The issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992). The court looks to see whether the defendant employer gave an honest explanation for the action it took. *Hudson*, 375 F.3d at 561. Lastly, "[a]s [the Seventh Circuit] often comment[s], courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002).

In this case, Plaintiff argues that evidence of pretext is demonstrated by the fact that an MSPB ALJ and one member of the two-member MSPB Board agreed that there was insufficient evidence to justify the denial of Plaintiff's within-grade increase. Plaintiff

claims this shows there are fact issues as to the legitimacy of Defendant's decision to deny Plaintiff's within-grade increase. Defendant argues just the opposite; that no pretext exists because "the MSPB Board itself could not agree that the denial was unsubstantiated, even under their heightened 'substantial evidence' standard." Def. Mem. at 25.

Following the hearings on Plaintiff's appeal, the ALJ ruled that Defendant failed to establish by substantial evidence that Plaintiff's performance was unacceptable and thus she was entitled to her within-grade increase. Defendant appealed the ALJ's decision to the MSPB Board. The two Board members that reviewed the appeal could not agree on the disposition of the case. The Chairman of the Board found substantial evidence of an unacceptable performance; the other board member did not. Therefore, the initial MSPB decision became the Board's final decision.

This Court is not concerned with whether or not Defendant's decision "was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (affirming the district court's grant of summary judgment for the employer). Our focus is on whether or not Olson's reason for his decision was honest. *Id.* The fact that two MSPB board members could not reach agreement shows that Olson's decision was not without merit, but it is ultimately not relevant. Olson credibly testified before the MSPB and explained that he denied Plaintiff's within-grade increase because he felt her communication was substandard. Olson supported his testimony with multiple examples of poor communication by Plaintiff. The ALJ's decision and the split Board do not establish pretext.

Plaintiff also claims that she has presented evidence that Olson's testimony about her

communication problems is unsubstantiated. Specifically, Plaintiff cites two emails sent to her in March and April of 2002, one year after the MSPB hearing, regarding two of the examples Olson testified about in the hearing that demonstrated Plaintiff's communication problems. One email is from the employee that attended the national conference in Washington, D.C., Samantha Martin ("Martin"), and the other is from the employee that retired from the out-base office, Les Alper ("Alper").

Neither email raises a triable issue of fact on the issue of pretext. While both emails explain the circumstances surrounding each incident more fully, neither email shows that Plaintiff contacted Olson regarding either incident. Olson's reason for denying Plaintiff's within-grade increase was her failure to communicate with him. While these emails may call into question how reasonable Plaintiff's failure to contact Olson was for each incident, neither email shows that Plaintiff did indeed contact him. Again, the inquiry for the Court is whether or not Olson's reasoning was honest, not whether it was accurate, wise, or well-considered. *Stewart*, 207 F.3d at 378. Olson testified that he was not contacted regarding either incident and he believed he should have been. These two emails do not raise a fact question that Olson's proffered reason was phony or pretextual.

For these reasons, the Court finds that Plaintiff has not created a fact issue that Defendant's proffered reason for denying Plaintiff's within-grade increase was pretextual.

# IV. CONCLUSION

Summary judgment will be granted in favor of Defendant for several reasons. First, Plaintiff failed to establish a *prima facie* case of retaliation. After engaging in protected activity, Plaintiff was subjected to an adverse employment action. Yet the only adverse action Plaintiff experienced was the denial of her within-grade increase; she was not subjected to a hostile work environment. Plaintiff's claim for the denial of her within-grade increase, however, is time-barred for failing to exhaust her administrative remedies. Furthermore, she did not demonstrate that no similarly situated employee who did not complain about discrimination or file an EEO charge was subjected to either a hostile work environment or a within-grade increase denial.

Next, even if Plaintiff had established a *prima facie* case of retaliation on Plaintiff's within-grade increase denial claim and that claim was timely, summary judgment for Defendant would be proper because Defendant presented unrebutted evidence of a non-invidious reason for the within-grade increase denial. Olson testified that he denied Plaintiff's within-grade increase because of her communication problems, and Plaintiff failed to create a genuine issue of fact that this reason was pretextual.

Plaintiff has not created a genuine issue of fact on her hostile work environment claim. The Court thoroughly reviewed the briefs, facts, and exhibits of the case. In the end, the Court concludes that Plaintiff was subjected to a variety of minor actions, which are endemic to the workplace, and do not rise to the level of a hostile work environment. Defendant did not unlawfully retaliate against Plaintiff.

For the reasons set forth in this opinion, Defendant's motion for summary judgment is granted and judgment is entered in favor of Defendant, Anthony J. Principi, Secretary of the United States Department of Veteran Affairs, and against Plaintiff, Catherine A. Kruger, on all three counts of Plaintiff's complaint.

SO ORDERED THIS 8th DAY OF MARCH, 2006.

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Roy R. Brandys
Ryan A. Haas
CHILDRESS DUFFY GOLDBLATT, LTD.
525 N. State Street, Suite 2200
Chicago, IL 60610

Counsel for Plaintiff

Samuel D. Brooks
ASSISTANT UNITED STATES ATTORNEY
219 South Dearborn Street
Chicago, IL 60604

Counsel for Defendant